UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------------------------------x
MR. OLYMPIA, LLC,

    Plaintiff,

-against-

ULTIMATE NUTRITION, INC.,

    Defendant.
----------------------------------------------------------x

17 CV 1346 (ALC)

**OPINION AND ORDER**

**ANDREW L. CARTER, JR., United States District Judge:**

Plaintiff Mr. Olympia, LLC brings this action against Defendant Ultimate Nutrition, Inc. in connection with an agreement between the parties entitled "2016-2019 Olympia Weekend Sponsorship Agreement" (the "Agreement"). Plaintiff alleges four claims: (first) breach of contract, (second) anticipatory breach, (third) breach of implied covenant of good faith and fair dealing, and (fourth) unjust enrichment. Defendant has moved to dismiss a portion of the breach of contract as well as the anticipatory breach and implied covenant claims. For the reasons that follow, Defendant's motion to dismiss is GRANTED in part and DENIED in part. Specifically, the anticipatory breach and implied covenant claims are dismissed, but the breach of contract claim survives.

## BACKGROUND

Plaintiff has the exclusive right to organize and conduct the Olympia Weekend. First Am. Compl. ("FAC") ¶¶ 11-12. From 2004 until 2008, Defendant was a general sponsor of the Olympia Weekend, and beginning in 2009, Defendant became the Title Sponsor of the Olympia

1

Weekend through various agreements with Plaintiff. *Id.* ¶ 14. In April 2016, the parties executed the Agreement confirming Defendant as the Title Sponsor for the 2016 Olympia Weekend. FAC Ex. A (Agreement). Following the conclusion of the 2016 Olympia Weekend, Defendant had sixty (60) days to exercise its "Opt-Out Option" in order to be relieved of its future obligations under the Agreement with respect to the 2017 Olympia Weekend. FAC ¶ 22; Agreement, § 6.

The Agreement states that Plaintiff as "Organizer" will provide to Defendant as "Sponsor" "the rights set forth in Schedule 1." *Id.* ¶ 26; Agreement, § 2(a). Schedule 1 lists certain promotional benefits and perks that Defendant will receive for being the Title Sponsor. *Id.* ¶ 26. Additionally, the Agreement provides that Defendant "shall pay, in accordance with Schedule 2, $500,000 per year to sponsor the applicable Olympia Weekend and Schedule 1 shall be supplemented for each of the 2017, 2018, and 2019 Olympia Weekends, as applicable, as mutually agreed by the parties." *See* Agreement, § 6 and Schedule 1. Schedule 2, which does not change from year to year, provides that for each of the 2017, 2018, and 2019 Olympia Weekends, Defendant shall pay Plaintiff $200,000 by January 15th of the applicable calendar year, $150,000 within 30 days of the January 15th payment, and $150,000 within 60 days of the January 15th payment. Agreement, Schedule 2.

Defendant did not exercise the Opt-Out Option within sixty days of the end of the 2016 Olympia Weekend or otherwise. *Id.* ¶ 23. So Plaintiff, by invoice dated January 5, 2017, requested payment from Defendant in the amount of $200,000 by January 15, 2017. *Id.* ¶ 43. Defendant failed to make the required January 15 payment to Plaintiff. *Id.* ¶ 44. On January 17, 2017, Defendant sent Plaintiff a proposed Schedule 1 to the Agreement. *Id.* ¶ 45. By email sent

on January 24, 2017, Plaintiff provided its comments to Defendant's proposed Schedule 1. *Id.* ¶ 46. Defendant responded that the proposed Schedule 1 did not work for them, and, since the "parties are not going to be able to agree on Schedule 1," Defendant will not be able to be the Sponsor. *Id.* ¶ 48, Ex. B. In a follow up e-mail, Defendant provided a new proposed Schedule 1 and stated that if Plaintiff did not accept this version then Defendant could not be the Sponsor. *Id.* ¶ 49, Ex. B. Plaintiff made another attempt to negotiate Schedule 1, but to no avail. *Id.* ¶¶ 50-52, Ex. C. Defendant did not make any payments on either February 15, 2017 or March 15, 2017. Plaintiff commenced this action in New York Supreme Court on February 3, 2017, and Defendant removed the action to this Court on February 22, 2017.

## STANDARD OF REVIEW

To survive a motion to dismiss under Fed. R. Civ. P. 12(b)(6), a claim must contain "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim has facial plausibility "when the plaintiff pleads factual content that allows the Court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. For the purposes of a motion to dismiss, the court must accept all factual allegations in the complaint as true and draw all reasonable inferences in the plaintiff's favor. *McCarthy v. Dun & Bradstreet Corp.*, 482 F.3d 184, 191 (2d Cir. 2007). On a motion to dismiss, a district court considers any written instrument attached to the complaint as an exhibit or any documents incorporated in the complaint by reference. *Int'l Audiotext Network, Inc. v. AT&T Co.*, 62 F.3d 69, 72 (2d Cir. 1995). The Court is not obliged to accept the allegations of the complaint on how to construct a contract, but any contractual

ambiguities are construed in favor of plaintiff. *Subaru Distributors Corp. v. Subaru of Am., Inc.*, 425 F.3d 119, 122 (2d Cir. 2005).

## DISCUSSION

Breach of Contract

Plaintiff alleges that Defendant breached the contract by (1) failing under the Agreement to pay Plaintiff $200,000 by January 15, 2017 and all subsequent payments and (2) failing to negotiate Schedule 1 with Plaintiff in good faith as required by the Agreement. FAC ¶¶ 65-66. Defendant challenges the first part of the claim on the basis that the Agreement is a non-binding Type II preliminary agreement, which left Schedule 1 open for negotiation. Defendant does not challenge the second part of the breach of contract claim.

Under New York law, a plaintiff bringing a claim for breach of contract must establish four elements: (1) the existence of a contract, (2) plaintiff's performance under the contract, (3) breach by the defendant, and (4) resulting damages. *See, e.g., Johnson v. Nextel Commc'ns, Inc.*, 660 F.3d 131, 142 (2d Cir. 2011). The issue, thus, is whether Plaintiff has pleaded the existence of a valid and binding contract between Plaintiff and Defendant. The Court finds that Plaintiff has.

For there to be a binding contract, "there must be a manifestation of mutual asset sufficiently definite to assure that the parties are truly in agreement with respect to all material terms." *Cohen v. Avanade, Inc.*, 874 F. Supp. 2d 315, 320 (S.D.N.Y. 2012) (quoting *Express Indus. and Terminal Corp. v. N.Y. State Dep't of Transp.*, 93 N.Y.2d 584, 693 N.Y.S.2d 857, 715 N.E.2d 1050, 1053 (1999)). An agreement to agree, which leaves a material term open for future negotiations, is not binding. *Tractebel Energy Marketing, Inc. v. AEP Power Marketing, Inc.*,

4

487 F.3d 89, 95 (2d Cir. 2007). A contract is not unenforceable "merely because it expresses the idea that something is left to future agreement" or because all its terms are not "fixed with absolutely certainty." *Id.* (internal citations omitted).

Here, the parties' intent to be bound by the Agreement is demonstrated by the express language in the agreement. *See Terwilliger v. Terwilliger*, 206 F.3d 240, 245 (2d Cir. 2000) ("Under New York law, a written contract is to be interpreted so as to give effect to the intention of the parties as expressed in the unequivocal language they have employed."); *cf. Arcadian Phosphates, Inc. v. Arcadian Corp.*, 884 F.2d 69, 72 (2d Cir. 1989) (noting the language of the agreement as the most important factor to consider in deciding whether a preliminary agreement is binding). First, the Agreement on page 7 explicitly provides that the "Agreement shall be binding upon the parties, their successors and permitted assigns" and that the "Agreement represents the entire agreement between the parties." Such language has been held to indicate the parties' intent to be bound. *Tractebel Energy*, 487 F.3d at 95 (language that an agreement "constitutes the entire agreement between the Parties" and is "binding" indicates that the parties intended the agreement to be binding); *Scholastic, Inc. v. Harris*, 80 F. Supp. 2d 139, 148 (S.D.N.Y. 1999), *aff'd in part, vacated in part on other grounds*, 259 F.3d 73 (2d Cir. 2001) ("[L]anguage stating that a contract constitutes 'an entire agreement'. . . strongly suggests that the parties intended to form such a binding contract.").

That the Agreement did not condition its enforceability on the successful negotiation of Schedule I further bolsters the conclusion that the Agreement is binding. *See Tractebel Energy*, 487 F.3d at 96. Schedule 1 contains various incidentals that Defendant will enjoy as the Sponsor of the Olympia Weekend. Defendant argues that the negotiation of a *new* Schedule I each year is

a condition precedent for the enforcement of the Agreement, but the language of the Agreement states that Schedule 1 is to be "supplemented . . . as applicable." The use of the word "supplement," which means "to add," demonstrates that the parties did not contemplate an entirely different schedule.[1] Moreover, the use of the words "as applicable" contemplates the possibility of no changes at all to Schedule 1 and use of Schedule 1 as is. Further, there is a provision that requires the Defendant to provide written notice within a time period that it is not proceeding with the following year's sponsorship. To read the agreement to find that a new Schedule 1 is a precondition for enforceability would be to effectively render this opt-out provision superfluous. New York law strongly encourages an interpretation of a contract that "gives reasonable and effective meaning to all terms of a contract" and does not render "at least one clause superfluous or meaningless." *Galli v. Metz*, 973 F.2d 145, 149 (2d Cir. 1992) (internal citations omitted). This principle especially applies here, where Defendant could have opted out pursuant to the provisions of the Agreement if the parties failed to agree to changes to Schedule 1 of Defendant's liking.

Defendant urges the Court to adopt the Type I/Type II preliminary agreement analysis in then District Judge Leval's well-respected opinion *Teachers Ins. & Annuity Ass'n of Am. v. Tribune Co.*, 670 F. Supp. 491, 498 (S.D.N.Y. 1987).[2] Plaintiff argues that New York courts have rejected this framework and "in determining whether [a] document in a given case is an

---

[1] *See* Supplement, *Oxford English Dictionary* (3d ed. 2012) ("[a] thing ... added to make good a deficiency or as an enhancement; an addition or continuation to remedy or compensate for inadequacies."); *cf.* Kenneth A. Adams, *A Manual for Contract Drafting* § 18.10 (3d ed. 2013) ("An Amendment serves to change the original agreement; a supplement simply adds to it.").

[2] "Type I preliminary agreements [are] complete, reflecting a meeting of the minds on all issues perceived to require negotiation" and thus "binds both sides to their ultimate contractual objective" even though there is no "formal or elaborate writing" yet. *Brown v. Cara*, 420 F.3d 148, 153-54 (2d Cir. 2005) (internal citations and quotation marks

enforceable contract or an agreement to agree" inquire "'whether the agreement contemplated the negotiation of later agreements and if the consummation of those agreements was a precondition to a party's performance.'" *Amcan Holdings, Inc. v. Canadian Imperial Bank of Commerce*, 70 A.D.3d 423, 427, 894 N.Y.S.2d 47, 50 (1st Dep't 2010) (citing *IDT Corp. v. Tyco Group, S.A.R.L.*, 13 N.Y.3d 209, 213 n.2, 918 N.E.2d 913, 890 N.Y.S.2d 401 (2009)).[3] The presence of open terms to be resolved in good faith negotiations at a later date does not necessarily make an agreement a preliminary one, understood as an agreement to agree, and thus the preliminary agreement dichotomy is inapposite.[4] *See Tractebel Energy*, 487 F.3d at 98 n.4. Here, the complaint alleges that the parties have agreed on all material terms and explicitly manifested their intent to be bound by those terms. The fact that they have left the implementation of Schedule 1 to be resolved in good faith negotiations at a later date is not an

---

omitted). Whereas Type II preliminary agreements "are binding only to a certain degree, reflecting agreement on certain major terms, but leaving other terms open for further negotiation" and thus do not commit both sides "to their ultimate contractual objective" but "to negotiate open issues in good faith in an attempt to reach the objective within the agreed framework." *Id.* at 153 (internal citations and quotation marks omitted). A judge has even contemplated "[a] hybrid between a Type I and Type II agreement . . . [which is] characterized by complete agreement on certain issues, and a lack of agreement on other, independent issues which the parties have agreed to resolve at a later date." *See Vacold LLC v. Cerami*, 545 F.3d 113, 132 (2d Cir. 2008) (Hall J., dissenting).

[3] The New York Court of Appeals stated that although it did "not disagree with the reasoning in federal cases" it did "not find the rigid classifications into 'Types' useful." *IDT Corp.*, 13 N.Y.3d at 213 n.2. The First Department has since interpreted *IDT Corp.* to reject the Type I/Type II framework. *See, e.g., Amcan Holdings, Inc. v. Canadian Imperial Bank of Commerce*, 70 A.D.3d 423, 427, 894 N.Y.S.2d 47, 50 (1st Dep't 2010); *Offit v. Herman*, 132 A.D.3d 409, 409-10, 16 N.Y.S.3d 737 (1st Dep't 2015). Federal courts in this district have continued to rely on the Type I/Type II framework. *See, e.g., Gas Natural, Inc. v. Iberdrola, S.A.*, 33 F. Supp. 3d 373, 378 n.1 (S.D.N.Y. 2014). The Second Circuit, albeit in non-precedential decisions, has done the same. *See, e.g., Rubinstein v. Clark & Green, Inc.*, 395 Fed. App'x 786, 789 (2d Cir. 2010); *SSP Capital Partners, LLP v. Mandala, LLC*, 402 Fed. App'x 572, 573 (2d Cir. 2010).

[4] Assuming that any agreement that contemplates further negotiation and agreement on terms is a preliminary agreement, the simplicity of the New York Court of Appeals test may avoid the difficulties that come with "policing the boundaries between [Type I and Type II agreements]." *See Vacold*, 545 F.3d at 132 (Hall, J. dissenting). Ultimately, the touchstone of any analysis "is the intent of the parties: whether the parties intended to be bound, and if so, to what extent." *Id.* at 125 (majority opinion) (quoting *Adjustrite Sys., Inc. v. GAB Bus. Servs., Inc.*, 145 F.3d 543, 548-89 (2d Cir. 1998)).

7

obstacle to pleading the existence of an enforceable contract. *Id.* at 98. Accordingly, Plaintiff has adequately alleged a breach of contract claim against Defendant.

Anticipatory Breach

Defendant seeks to dismiss Plaintiff's anticipatory breach claim because Plaintiff cannot simultaneously pursue a breach of contract claim and an anticipatory breach claim premised on the same underlying conduct. The Court agrees.

"Anticipatory repudiation occurs when, before the time for performance has arisen, a party to a contract declares his intention not to fulfill a contractual duty." *Lucente v. Int'l Bus. Machs. Corp.*, 310 F.3d 243, 258 (2d Cir. 2002). Therefore, "[b]y definition an anticipatory breach cannot be committed by a party already in material breach of an executory contract." *Kaplan v. Madison Park Group Owners, LLC*, 94 A.D.3d 616, 618, 942 N.Y.S.2d 522, 524 (1st Dep't 2012). This is because when confronted with anticipatory repudiation of a contract, the non-repudiating party has a choice between seeking damages at the time of the anticipatory breach or waiting until the designated time of performance. *See Lucente*, 310 F.3d at 258. Either one or the other; a plaintiff must affirmatively choose. Here, Plaintiff's breach of contract claim is predicated on Defendant's failure to pay installments that are alleged to have been due and a failure to negotiate Schedule 1 in good faith. FAC ¶¶ 64-65. Defendant was in material breach of the contract by not making any payment by January 15. *See ARP Films, Inc. v. Marvel Entm't Grp., Inc.*, 952 F.2d 643, 649 (2d Cir. 1991) ("failure to tender payment is generally deemed a breach of a contract"). Plaintiff cannot bring an anticipatory breach claim for alleged communications by Defendant that it would not perform *after* non-performance had already occurred. Accordingly, Plaintiff's second cause of action is dismissed.

Implied Covenant of Good Faith and Fair Dealing

Similarly, Plaintiff's breach of the covenant of good faith and fair dealing claim is also duplicative of the breach of contract claim. In order to simultaneously allege "breach of contract and implied covenant claims under New York law, a plaintiff must allege an implied duty that is consistent with the express contractual terms, but base its implied covenant theory on allegations that are distinct from the factual predicate for its contract claims." *JPMorgan Chase Bank, N.A. v. IDW Grp., LLC*, No. 08 Civ. 9116, 2009 WL 321222, at *5 (S.D.N.Y. Feb. 9, 2009). Otherwise, the implied covenant claim is duplicative of the breach of contract claim, because both "arise from the same facts and seek identical damages." *Deusche Bank Nat. Trust Co. v. Quicken Loans Inc.*, 810 F.3d 861 (2d Cir. 2015) (quoting *Amcan Holdings*, 70 A.D.3d at 426); *see also Harris v. Provident Life & Acc. Ins. Co.*, 310 F.3d 73, 81 (2d Cir. 2002) ("New York law . . . does not recognize a separate cause of action for breach of the implied covenant of good faith and fair dealing when a breach of contract claim, based upon the same facts, is also pled.").

Here, the Plaintiff specifically alleges in support of its implied covenant claim that "Defendant allowed Plaintiff to believe Defendant would comply with its obligations under the Agreement including, but not limited to, negotiating in good faith with Plaintiff with respect to Schedule 1 of the Agreement and fulfilling its other obligations under the Agreement." FAC ¶ 77. Yet, Plaintiff, in the very same pleading in support of its breach of contract claim, alleges that Defendant breached the Agreement "by failing to negotiate Schedule 1 with Plaintiff in good faith as required by the Agreement." *Id.* ¶ 65. Both claims clearly rest on the same set of facts and are duplicative. As a result, Plaintiff's third cause of action is dismissed.

## CONCLUSION

For the foregoing reasons, Defendant's motion to dismiss is GRANTED in part and DENIED in part. The second and third causes of action are DISMISSED. The first cause of action in its entirety survives.

**SO ORDERED.**

Dated:     March 13, 2018
              New York, New York

**ANDREW L. CARTER, JR.**
**United States District Judge**